IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| DAYBREAK YOUTH SERVICES, a Washington public benefit corporation, | No. 54137-8-II |
| Appellant, | |
| v. | |
| CLARK COUNTY SHERIFF'S OFFICE, an agency of the State of Washington, | PUBLISHED OPINION |
| Respondent. | |

LEE, C.J. — The Clark County Sheriff's Office (CCSO) seized various patient records from Daybreak Youth Services while executing several search warrants. Daybreak filed an action in superior court seeking return of the seized patient records. Daybreak appeals the trial court's order on good cause and the order denying the motion for return of property. Daybreak argues that the order on good cause did not satisfy federal law requirements.

The patient records seized have been returned, rendering the issues in this case moot. However, this case presents issues of continuing and substantial public interest; therefore, we exercise our discretion and review the merits. We hold that the order on good cause failed to comply with the requirements of federal law, and therefore, the trial court erred in issuing the order on good cause. Because the trial court erred in issuing the order on good cause, the order denying

the motion for return of property is necessarily error. Accordingly, we reverse the order on good cause and the order denying the motion for return of property.

FACTS

A.    SEIZURE OF DAYBREAK'S RECORDS

Daybreak is a treatment facility that provides inpatient and outpatient drug and alcohol treatment to teens. Daybreak's services include psychiatric evaluation and treatment; individual, group, and family therapy; and medication evaluation.

On June 12, 2018, CCSO Enforcement Sergeant Christopher Luque began investigating whether Daybreak was failing to report serious incidents at its treatment facility, including assaults and rapes. Daybreak initially cooperated with the investigation and voluntarily provided Sergeant Luque with records such as incident reports and surveillance videos. However, in August 2018, Daybreak stopped voluntarily providing records and told CCSO that they required a search warrant.

Sergeant Luque obtained a total of eight search warrants related to the Daybreak investigation. Based on these search warrants, CCSO seized patient records, computers, hard drives, and flash drives. Sergeant Luque's investigation revealed approximately seventeen serious incidents that occurred at Daybreak, many of which were not reported to the proper authorities.

B.    DAYBREAK'S COMPLAINTS

On September 12, 2018, Daybreak filed a complaint against CCSO in Clark County Superior Court. The complaint included claims for injunctive and declaratory relief. In its claim for injunctive relief, Daybreak claimed the seized records contain documents covered by attorney-

client privilege, medical records, and confidential patient information.  Daybreak sought judicial review of the records prior to review of the records by CCSO.  Daybreak claimed it was "entitled to a temporary restraining order, along with preliminary and permanent injunctive relief, prohibiting CCSO from reviewing, disclosing, or using any documents that subject (sic) to the attorney-client privilege and medical records."  Clerk's Papers (CP) at 5.

On June 24, 2019, Daybreak filed an amended complaint for a writ of replevin and return of property.  In its amended complaint, Daybreak asserted that its patient records were subject to confidentiality under federal law, 42 U.S.C § 290dd-2 and 42 C.F.R. Part 2, because it is a federally assisted treatment facility for substance use disorders.  Thus, Daybreak argued, it was entitled to a writ of replevin because its records were seized in violation of 42 C.F.R. Part 2 and it had the right to move for return of all of its illegally seized property.

C.      ORDER ON GOOD CAUSE

On June 19, 2019, CCSO filed a motion for an order of good cause under 42 U.S.C. § 290dd-2 in the Clark County Superior Court.[1]  The motion was filed in response to Daybreak's second motion for a temporary restraining order filed in federal district court.  In its motion, CCSO asserted that Daybreak was the party obligated to maintain confidentiality of the records and Daybreak did not raise the issue until the federal court proceeding.  Specifically, CCSO claimed, "Daybreak should have advised CCSO before the search warrants were served, at the time the

---

[1]  42 U.S.C. § 290dd-2 addresses confidentiality and disclosure of records "which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States."  42 U.S.C. § 290dd-2(a).

search warrants were served on September 11, 2018, or during the pendency of this action in September, 2018 regarding the requirements of 42 U.S.C. § 290dd-2." CP at 95.

CCSO filed the motion for an order of good cause "to confirm this court's prior determination that CCSO's search warrants were not overbroad and to find that good cause exists to retain and disclose, with appropriate redactions, these records for law enforcement and criminal justice purposes." CP at 95.

In support of the motion for an order of good cause, Sergeant Luque declared that at no point during his investigation, including execution of the search warrants, did Daybreak staff inform him that he would need to obtain an order under federal law. Luque explained that

> [n]one of the evidence of my investigation is based on the fact that juveniles received substance use disorder treatment at Daybreak nor is it at all relevant to the investigation of Daybreak and its failure to report serious incidents. The fact that juvenile patients were receiving substance use disorder treatment was not the focus of my investigation, nor did it have any weight, bearing or influence on my investigation. Nor was it my intention to use any information in any substance use disorder treatment records to investigate or prosecute juvenile patients.

CP at 514-15. Sergeant Luque also declared that because Daybreak had stopped providing information voluntarily, the only avenue for obtaining necessary investigative material was through a search warrant. Sergeant Luque further declared that the only seized items that he provided to the prosecuting attorney's office pursuant to the warrant were discharge summaries showing the dates certain patients were at the Daybreak facility.

In its order on the motion for good cause, the trial court made the following findings:

> 1. The records obtained by CCSO through search warrants to Daybreak Youth Services could not have been obtained through other mechanisms;

2. The public interest and need for the disclosure of records obtained by these search warrants outweighs any potential injury to the patient, the physician-patient relationship and the treatment services; and

3. All records obtained from the search warrants have been retained with sufficient controls and limitations to protect confidential information pursuant to 42 U.S.C.A. § 290dd-2(a).

CP at 1054.

The trial court granted CCSO's motion for an order of good cause. The trial court's order contained provisions protecting the information in the seized records. The order also prohibited use of any information in the seized records to investigate or prosecute any Daybreak patient. And the order required that notice of the order be provided to all patients whose information was seized.

The trial court also ordered the search warrants be sealed and that redacted versions of the warrants be filed. And the trial court granted a protective order imposing specific processes for protecting information in response to public records requests.

D.    MOTION FOR RETURN OF DOCUMENTS

On July 1, 2019, Daybreak filed a motion for return of the seized documents. Daybreak argued that CCSO had illegally seized its records by failing to comply with federal regulations under 42 C.F.R. Part 2. Daybreak also argued that the search warrants were not supported by probable cause and violated the particularity requirement.

CCSO argued that Daybreak did not have standing to seek the return of property. Further, CCSO argued that the motion should be denied because it was based on arguing the search warrants were invalid and the validity of the search warrants had already been affirmed on two separate occasions. And CCSO argued the motion was moot because it had already agreed to return the evidence that had been seized.

The trial court denied Daybreak's motion for return of property. Subsequently, CCSO filed notice that it would voluntarily return the seized evidence, including Daybreak's computers, hard drives, and patient records.[2]

Daybreak appeals the trial court's orders granting the motion for good cause and denying its motion for return of property.[3]

## ANALYSIS

A.    MOOTNESS

As an initial matter, CCSO argues that Daybreak's appeal should be dismissed as moot because the seized records have been returned to Daybreak. However, even if this appeal is moot because the records have been returned, this case presents issues of continuing and substantial interest. Therefore, we address the merits of Daybreak's appeal.

We will dismiss an appeal if it is moot. RAP 18.9(c). We review whether an appeal is moot de novo. *Center for Biological Diversity v. Dep't of Fish & Wildlife*, 14 Wn. App. 2d 945, 985, 474 P.3d 1107 (2020).

An appeal is moot if "the matter is 'purely academic' such that the court cannot provide effective relief." *Id.* (quoting *City of Sequim v. Malkasian*, 157 Wn.2d 251, 258, 138 P.3d 943

---

[2] On appeal, Daybreak does not dispute that all the seized evidence, with the exception of three discharge summaries, have been returned.

[3] Daybreak has also filed two motions to take judicial notice of additional facts. Appellant's Motion for Judicial Notice of the Court Order Dismissing all Charges Against Daybreak Employee Michael Trotter, or, in the alternative, Striking all the Respondent's References to Criminal Conduct by Trotter, (April 1, 2020); Appellant's Suppl. Motion to Take Judicial Notice, (April 7, 2020). We deny both motions.

(2006)). When an appellant has already obtained the requested relief, an appeal is technically moot. *In re Det. of Nelson*, 2 Wn. App. 2d 621, 628, 411 P.3d 412, *review denied*, 190 Wn.2d 1029 (2018).

However, we may exercise our discretion to decide a moot appeal when the appeal involves matters of continuing and substantial public interest. *Biological Diversity*, 14 Wn. App. 2d at 985. We consider three factors to determine whether to exercise our discretion to decide a moot appeal: "'(1) whether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur.'" *Id.* at 986 (quoting *Hart v. Dep't of Soc. & Health Services*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988)). This exception is only applied when "'the real merits of the controversy are unsettled and a continuing question of great public importance exists.'" *Id.* (quoting *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)).

The first criteria weighs in favor of exercising our discretion to review matters of substantial public interest. Here, the issue involves seizure of records governed by federal law and regulations regarding substance use disorder treatment. As Daybreak correctly points out, federal law has identified an interest in encouraging people with substance use disorders to seek treatment and providing protection of those records to further that interest. Therefore, this issue could impact patients seeking substance use disorder treatment, providers of substance use disorder treatment, and law enforcement agencies seeking records from facilities providing substance use disorder treatment.

The second factor also weighs in favor of exercising our discretion to address a moot issue. Daybreak argues that "[g]uidance is badly needed so that judges will realize that they should *not* simply sign off on search warrants authorizing the seizure of drug treatment records without considering the requirements of federal law." Reply Br. of Appellant at 12. We agree that there is little to no guidance for law enforcement agencies or trial courts. Therefore, guidance from this court on the application of the effect of federal law on search warrants for records related to substance use disorder treatment to provide future guidance to public officers is desirable.

Finally, Daybreak argues that "there is a strong likelihood of reoccurrence of the issues raised here precisely because there is an absence of case law to guide police, and because the Sheriff in this case insists that his office did nothing wrong." Reply Br. of Appellant at 12. We agree that without any guidance, there is a strong likelihood that issues involving search warrants for records from substance use disorder treatment facilities will recur.

Weighing all the factors, issues relating to the issuance of the good cause order raised by Daybreak on appeal are issues of substantial public interest. Therefore, although the records have been returned to Daybreak, we exercise our discretion to reach the merits of Daybreak's appeal of the trial court's order on good cause and order denying the motion for return of property.

B.      ORDER ON GOOD CAUSE AND ORDER DENYING THE MOTION FOR RETURN OF PROPERTY

Daybreak appeals the trial court's order on good cause and the order denying the motion for return of property. Daybreak's arguments focus on why the order on good cause did not satisfy the requirements of federal law.[4]

1.      Federal Law and Regulations

42 U.S.C. § 290dd-2(a) provides:

> Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e), be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b).

42 U.S.C. § 290dd-2(b)(2)(C) allows disclosure of confidential records if authorized by a court order granted based on good cause. Specifically, 42 U.S.C. § 290dd-2(b)(2)(C) provides:

> If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

---

[4] Daybreak does not provide any argument specifically related to the order denying its motion for return of property; however, we presume that Daybreak is contending that the records were seized illegally and, therefore, the trial court should have granted Daybreak's motion for return of property.

The regulations governing disclosure of confidential records are contained in 42 C.F.R. Part 2. Subpart E provides the regulations governing court orders authorizing disclosure of confidential records. The relevant regulations are 42 C.F.R. § 2.61, § 2.64, and § 2.66.

42 C.F.R. § 2.61 defines the legal effect of a court order entered under the regulations. The order's "only purpose is to authorize a disclosure or use of patient information which would otherwise be prohibited." 42 C.F.R. § 2.61(a). A subpoena or similar legal mandate is necessary to compel disclosure. 42 C.F.R. § 2.61(a).

42 C.F.R. § 2.66 governs orders authorizing disclosure of records for investigation and prosecution of a program providing substance use disorder treatment governed by federal law, as opposed to investigations involving patients receiving treatment for substance use disorders. Any administrative, regulatory, supervisory, investigative, law enforcement, or prosecutorial agency having jurisdiction over the program may apply for an order authorizing the disclosure of records. 42 C.F.R. § 2.66(a)(1). An application under § 2.66 may be granted without notice to the agency. 42 C.F.R. § 2.66(b). Any order granted under § 2.66 must require deletion of patient identifying information from documents made available to the public and prohibit information obtained under the order from being used to investigate patients. 42 C.F.R. § 2.66(d). The order must comply with 42 C.F.R. § 2.64(d) and (e). 42 C.F.R. § 2.66(c).

42 C.F.R. § 2.64 provides, in relevant part, that

> (d) *Criteria for entry of order.* An order under this section may be entered only if the court determines that good cause exists. To make this determination the court must find that:
> (1) Other ways of obtaining the information are not available or would not be effective; and

(2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

(e) *Content of order.* An order authorizing a disclosure must:

(1) Limit disclosure to those parts of the patient's record which are essential to fulfill the objective of the order;

(2) Limit disclosure to those persons whose need for information is the basis for the order; and

(3) Include such other measures as are necessary to limit disclosure for the protection of the patient, the physician-patient relationship and the treatment services; for example, sealing from public scrutiny the record of any proceeding for which disclosure of a patient's record has been ordered.

2.     Order on Good Cause

Daybreak makes numerous arguments why the order on good cause fails to comply with the above regulations, making seizure of the records illegal. First, Daybreak argues that CCSO was required to obtain the good cause order before seizing the documents and that no retroactive order can cure the violation. Second, Daybreak argues that CCSO failed to comply with 42 C.F.R. § 2.61 by failing to get a subpoena or an order to compel in addition to the good cause order. Third, Daybreak argues that the good cause order omitted three essential findings from its order. Fourth, Daybreak argues that the trial court's good cause order failed to include required limitations on the records that could be seized. We address each of these arguments in turn.[5]

a.     Timing of good cause order

Daybreak argues that the order on good cause was not valid because it must be issued prior to the disclosure, not after, which is what happened here. CCSO argues that because the federal

---

[5] Daybreak also argues that CCSO failed to comply with regulations regarding disclosure of patient records when investigating patients, which is governed by 42 C.F.R. § 2.65. However, here, Sergeant Luque was clear throughout the case that the investigation was related to investigating Daybreak's failure to report serious incidents, not the patients themselves.

law applies to the program and not to the law enforcement agency, it is permitted to obtain a good cause order after the records have been seized.

42 U.S.C. § 290dd-2(b)(2)(C) allows for disclosure of records if the disclosure is authorized by an appropriate court order. There is nothing in the statutory scheme that indicates a good cause order can be entered *after* the records at issue have already been disclosed or seized. Rather, the federal law imposes the requirement of a good cause order in order to protect the confidentiality of patient records, and confidentiality of patient records cannot be protected if the records are disclosed or seized before a good cause order is secured. *See* 42 C.F.R. §§ 2.1, 2.2(a). Indeed, the language of 42 C.F.R. § 2.64 (d) and (e) clearly indicate the need to maintain confidentiality of patient records by setting forth when disclosure may be ordered and requiring limits on any disclosure. Unless the 42 C.F.R. § 2.64 (d) and (e) requirements for disclosure are met, disclosure is prohibited. 42 C.F.R. § 2.2(b)(1).

Here, the 42 C.F.R. Part 2 regulations required CCSO obtain an order on good cause before obtaining and executing the search warrants. Therefore, the trial court erred by granting a good cause order *after* law enforcement had already executed a search warrant and seized the patient records.

b.      Legal mandate

Daybreak argues that CCSO failed to comply with 42 C.F.R. § 2.61 because CCSO was required to obtain, in addition to a good cause order, a subpoena to comply with the legal mandate requirement in 42 C.F.R. § 2.61. However, because CCSO obtained search warrants, the separate legal mandate requirement was satisfied. *See* 42 C.F.R. § 2.61(a).

42 C.F.R. § 2.61 does not require a subpoena, it only requires a "similar legal mandate" in order to compel disclosure. 42 C.F.R. § 2.61(a). Here, a search warrant is a similar legal mandate. Therefore, CCSO would have complied with 42 C.F.R. § 2.61 had it obtained a timely good cause order along with the search warrants.[6]

c.    Challenged for lack of findings

Daybreak argues that the trial court erred in finding that the *records* would not have been available through other mechanisms. Daybreak also argues that the trial court's good cause order was invalid because the trial court failed to find there was a likelihood the seized records would disclose information of substantial value or that there was an existing threat to life or of serious bodily injury.

Here, the trial court found that "[t]he records obtained by CCSO through search warrants to Daybreak Youth Services could not have been obtained through other mechanisms." CP at 1054. Daybreak contends that this was an erroneous finding because CCSO failed to exhaust alternative investigative techniques such as interviews that would have produced the same information. We will not engage in speculation about other "mechanisms" CCSO might have used to obtain the information; it is sufficient that the trial court's finding did not comply with the requirements of the statute.

---

[6] Daybreak argues that the search warrants were overbroad in violation of the particularity requirement in the Fourth Amendment of the United States Constitution and that the seizure of its patient records violated Article 1, section 7 of the Washington Constitution. The fact specific inquiry into the validity of the search warrants is not a matter of substantial public interest. *See Biological Diversity*, 14 Wn. App. 2d at 986. Therefore, we decline to address Daybreak's arguments regarding the validity of the search warrants.

42 U.S.C. § 2.64(d)(1) requires a finding that *the information* is not available through other means. But the trial court found that *the records* could not have been obtained through other mechanisms. Therefore, the trial court erred by entering the good cause order without making appropriate findings.

Next, Daybreak contends that the trial court's order was invalid because it failed to find that there was a reasonable likelihood that the records will disclose information of substantial value. But this is a requirement contained in 42 C.F.R. § 2.65(d), which applies to investigations of patients, not to investigations of the facility. Here, CCSO was investigating the facility. Therefore, the trial court was not required to make this finding.

Similarly, Daybreak argues that the trial court failed to find that there was an existing threat to life or of substantial bodily injury. But this is also a requirement of 42 U.S.C. § 2.65(d). Therefore, the trial court was not required to make this finding in the good cause order.

> d.      Omitted limitations

Daybreak argues that the good cause order is invalid because it fails to limit the disclosure to the parts of the record that are essential to fulfill the objective of the order. We agree.

42 C.F.R. § 2.64(e)(1) requires that an order authorizing disclosure must "[l]imit disclosure to those parts of the patient's record which are essential to fulfill the objective of the order." Here, the trial court's good cause order contained various limitations on the use and further disclosure of the information in the records, but the order did not contain any findings or conclusions limiting the disclosure of the records to the objective of the good cause order. Therefore, the trial court's order did not contain limitations that were required by the federal regulations.

No. 54137-8-II

For the reasons discussed above, the trial court erred by granting an after-the-fact good cause order. And because the trial court erred in issuing the order on good cause, the order denying the motion for return of property is necessarily error.

CONCLUSION

The order on good cause failed to comply with the requirements of federal law, and therefore, the trial court erred in issuing the order on good cause. Because the trial court erred in issuing the order on good cause, the order denying the motion for return of property is necessarily error. Accordingly, we reverse the order on good cause and the order denying the motion for return of property.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.P.T.

15